**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Judith Scrase, | Case No. 2:22-cv-01207-JAD-DJA |
| Plaintiff, | |
| v. | **Order**<br>**&**<br>**Report and Recommendation** |
| Richard and Edna Scrase, | |
| Defendants. | |

Plaintiff is proceeding in this action *pro se* and *in forma pauperis*. After the Court dismissed her complaint with leave to amend, Plaintiff timely filed an amended complaint. (ECF No. 8). She also filed a motion for appointment of counsel. (ECF No. 9). Because all of Plaintiff's claims are time-barred, the Court recommends dismissal of her complaint with prejudice. Because the Court is recommending dismissal of her complaint, it also denies her motion for appointment of counsel.

**I.      Screening the complaint**

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d

719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Id.* at 678. Secondly, where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Under 28 U.S.C. § 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law. *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002). Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

### A. *The Court dismisses Plaintiff's complaint without prejudice.*

Plaintiff brings four claims: (1) fraud on the court; (2) elder abuse; (3) "exploitation for financial gain"; and (4) false imprisonment. (ECF No. 8 at 24-25). These claims are based on

1  Plaintiff's allegations that family members and others in her aging mother's life[1] extorted money
2  from her, moved her into living situations with unfavorable conditions, and isolated her until her
3  death. (*Id.* at 1-25). Plaintiff alleges that the Court has diversity jurisdiction over the action
4  because all parties are diverse and the amount in controversy exceeds $75,000. (*Id.* at 1).

5       Plaintiff's mother—Barbara Gibson-Poole—named Plaintiff trustee of her estate in 2007.
6  (*Id.* at 4). In March of 2016, Plaintiff alleges that she was "required by family court to rescind"
7  documents that she had recorded to attempt and save her mother's house during Gibson-Poole's
8  most recent marriage. (*Id.* at 11). On March 30th, Plaintiff alleges that Richard Alexander
9  Scrase, Gibson-Poole's son, coerced Gibson-Poole into giving her house to him. (*Id.* at 11-12).
10 And on August 8th, 2016, Gibson-Poole signed a last will and testament in favor of Richard.[2]
11 (*Id.*). But shortly after, Plaintiff alleges that a doctor declared Gibson-Poole incapacitated and
12 thus, Gibson-Poole could not have understood either document. (*Id.*).

13      A hearing was scheduled for February 25, 2016 in family court regarding reverting
14 Gibson-Poole's assets to her from Plaintiff. (*Id.* at 12-14). Richard and his wife Edna allegedly
15 arranged Gibson-Poole's housekeeper—Olga Fimbres[3]—to take Gibson-Poole to the airport on
16 February 12, 2016 to visit Richard and Edna. (*Id.*). Plaintiff alleges that this was intended to
17 isolate Gibson-Poole and prevent her from having a voice at the hearing. (*Id.*). Plaintiff alleges
18 that Gibson-Poole was kept in Richard and Edna's farm in Bellingham, Washington against
19 Gibson-Poole's will. (*Id.*). Plaintiff alleges that Gibson-Poole tried to run away, but that Edna
20 and Richard kept her in Washington until Richard "had his transfer documents signed and
21 recorded." (*Id.*). Plaintiff asserts that the "Attorney General Investigator Jacklyn O'Malley and

---

[1] Plaintiff alleges that one of Gibson-Poole's neighbors—Edward Wright—and her mother's husband for a brief time—James Amer—also attempted and were successful in extorting money from Gibson-Poole. (ECF No. 8 at 4-10). But Plaintiff does not name either of these individuals as a defendant. (*Id.* at 1).

[2] For clarity, the Court refers to Richard Scrase and Edna Scrase by their first names.

[3] Plaintiff also does not name Olga Fimbres as a defendant.

Chief Deputy District Attorney were complicit in these actions, arising to a fraud on the court."[4] (*Id*). A few days later, Richard recorded a deed "ordering Barbara B. Gibson-Poole to have the title restored to her," which Plaintiff alleges was contempt of court. (*Id.*).

When Gibson-Poole returned home, she alleges that Richard and Edna would call and threaten her. (*Id.* at 16-17). They also threatened to call the Attorney General if Gibson-Poole's friend Janice Johnson took her anywhere, which Plaintiff asserts were attempts at imprisonment. (*Id.*). Plaintiff alleges that Fimbres helped Richard and Edna keep tabs on Gibson-Poole by stopping in regularly. (*Id.*).

In June of 2017, Gibson-Poole asked for Terry Koch, a volunteer from the Blind Center where Gibson-Poole was a member, to move in with her for twenty-four-hour care. (*Id.* at 17-18). Plaintiff asserts that Koch was a good fit for the job and approved of her mother's request. (*Id.*). But Fimbres allegedly made a false police report about Koch, after which Koch declined to take the job. (*Id.*).

On September 8th or 9th of 2017, Fimbres again put Gibson-Poole on an airplane to Bellingham, Washington. (*Id.* at 18-19). Upon her arrival, Richard and Edna placed Gibson-Poole in an assisted living facility. (*Id.*). When family members tried to find Gibson-Poole, Edna wrote to O'Malley on September 13, 2017 complaining that family was trying to find out where Gibson-Poole was, but that Gibson-Poole was "crazy." (*Id.*). On September 14, 2017, Plaintiff received a call from one of her cousins, stating that Richard had said he had put Gibson-Poole in an institution. (*Id.*). Plaintiff asserts that, by placing Gibson-Poole in assisted living, Richard and Edna deprived her of her social and personal life. (*Id.*). On March 10, 2018, Plaintiff alleges that Richard sold Gibson-Poole's house, including all the possessions and furniture inside, to Fimbres and her husband for well under market value. (*Id.* at 19-20). Fimbres later sold the home for a much higher price on November 4, 2021. (*Id.*).

---

[4] Plaintiff also fails to name Jacklyn O'Malley or the Chief Deputy District Attorney as defendants. But even if she had, her claims against these individuals are too conclusory, failing to describe how they were complicit in Richard and Edna's alleged extrinsic fraud.

On December 19, 2018, Plaintiff alleges that Gibson-Poole died alone. (*Id.*). No family was notified. (*Id.*). Plaintiff concludes that Richard and Edna lied to police and government officials about Gibson-Poole when there was no need to disturb her life. (*Id.* at 21-22). Plaintiff asks the Court to grant her a share of Gibson-Poole's estate, along with the home and all of its contents. (*Id.* at 22-23).

### 1. Fraud on the court

Plaintiff appears to be alleging extrinsic fraud, which is "conduct preventing a party from presenting his claim in court," and is "not an error by that court…[i]t is rather, a wrongful act committed by the party or parties who engaged in the fraud." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). The statute of limitations for fraud is three years. Nev. Rev. Stat. (NRS) 11.190(3)(d).

Plaintiff alleges that Richard and Edna arranged a flight for Gibson-Poole around the time of a family court hearing regarding her assets in order to deprive Plaintiff of the opportunity to present her claim in court. Liberally construing Plaintiff's complaint, she alleges that, as a result, certain of Gibson-Poole's assets that would have gone to her instead went to Richard. But Plaintiff asserts that this took place in 2016, well over three years before Plaintiff brought her complaint in 2022. And because Plaintiff asserts to have been present at the hearing, she received notice of the fraud in 2016. Because the clock begins running upon discovery of the fraud, the statute of limitations ran in 2019. *See* NRS 11.190(3)(d). The Court thus recommends dismissal of this claim with prejudice because this deficiency cannot be cured by amendment.

### 2. Elder abuse

NRS § 41.1395(1) states:

> [I]f an older person or a vulnerable person suffers a personal injury or death that is caused by abuse or neglect or suffers a loss of money or property caused by exploitation, the person who caused the injury, death or loss is liable to the older person or vulnerable person for two times the actual damages incurred by the older person or vulnerable person.

Under NRS § 41.1395(4)(b), "exploitation" means,

> [A]ny act taken by a person who has the trust and confidence of an older person or a vulnerable person or any use of the power of attorney or guardianship of an older person or vulnerable person to:
>
> (1) Obtain control, through deception, intimidation or undue influence, over the money, assets or property of the older person or vulnerable person with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of that person's money, asserts or property; or
>
> (2) Convert money, assets or property of the older person with the intention of permanently depriving the older person or vulnerable person of the ownership, use, benefit or possession of that person's money, assets or property.

Plaintiff alleges that Richard and Edna exploited Gibson-Poole by having her sign documents she could not understand to transfer her assets to Richard and abused her by isolating her from her family. Plaintiff alleges that this abuse continued until Gibson-Poole's death in December of 2018. However, under NRS 11.190(3)(a), actions "upon a liability created by statute," must be brought within three years. Because the latest date Gibson-Poole could have experienced Richard and Edna's abuse was in December of 2018, the statute of limitations on this claim ran in December of 2021, well before Plaintiff filed her action in July of 2022. The Court thus recommends dismissing this claim with prejudice because this deficiency cannot be cured by amendment.

### 3. "Exploitation for financial gain"

Plaintiffs claim for "exploitation for financial gain" appears to be reiterating her elder abuse claim. Because Nevada's elder abuse statute provides for exploitation—specifically exploitation to obtain control over money—the Court recommends dismissing this claim with prejudice as redundant.

### 4. False imprisonment

False imprisonment in Nevada is a restraint of one's liberty without any sufficient cause therefor. *Lerner Shops of Nev., Inc. v. Marin*, 83 Nev 75, 77 (1967); NRS 200.460(1). NRS 200.460(2) provides for civil damages. *Jensen v. Sheriff, White Pine County*, 89 Nev. 123, 125

(1973). However, submission to the mere verbal direction of another, unaccompanied by force or threats of any character, does not constitute false imprisonment. *Lerner*, 83 Nev. at 78. NRS 11.190(4)(c) provides a two-year limitations period for an action for false imprisonment. NRS 11.190(4)(c); *Wilson v. Las Vegas Metropolitan Police Dep't*, 498 P.3d 1278, 1281, 147 Nev. Adv. Op. 70 (Nev. Nov. 18, 2021). The latest date Gibson-Poole could have been falsely imprisoned was in December of 2018. Thus, the statute of limitations on this claim ran in December of 2020. The Court recommends dismissal of this claim with prejudice because this deficiency cannot be cured by amendment.

**II.     Plaintiff's motion for appointment of counsel**

Plaintiff moves for appointment of counsel. (ECF No. 9). She explains that she is unable to adequately represent herself or to pay fees, and has not been able to obtain a pro bono or contingency attorney. (*Id.*). However, because the Court is recommending dismissal of Plaintiff's claims with prejudice, it also denies her motion to appoint counsel.

**ORDER**

**IT IS THEREFORE ORDERED** that Plaintiff's motion to appoint counsel (ECF No. 9) is **DENIED.**

**REPORT & RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Plaintiff's amended complaint (ECF No. 8) be **DISMISSED WITH PREJUDICE** because amendment would be futile.

**NOTICE**

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days after service of this Notice. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985) *reh'g denied*, 474 U.S. 1111 (1986). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual

issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: January 27, 2023

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE