UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| Judith Scrase,<br><br>           Plaintiff,<br><br>    v.<br><br>Richard Alexander Scrase and Edna Patricia Scrase,<br><br>           Defendants. | Case No. 2:22-cv-01207-JAD-DJA<br><br>**Order<br>and<br>Report and Recommendation** |

Plaintiff is proceeding in this action *pro se* and *in forma pauperis*. She has submitted a second amended complaint. (ECF No. 16). Plaintiff has also moved for appointment of counsel and for the Court to issue summons. (ECF Nos. 17 and 19). In screening Plaintiff's second amended complaint, the Court finds that Plaintiff has alleged a colorable claim for fraud and elder abuse, but that Plaintiff's false imprisonment claim is barred by the applicable statutes of limitations. The Court thus recommends dismissing Plaintiff's false imprisonment claim with prejudice and allowing Plaintiff's fraud and elder abuse claims to proceed. Because the Court finds that Plaintiff has not demonstrated exceptional circumstances, it denies her motion for appointment of counsel. (ECF No. 17). Because the Court finds that Plaintiff's motion for the Court to issue summons is premature, it denies it. (ECF No. 19).

**I.     Background.** [1]

The crux of Plaintiff's complaint is that her brother Richard Scrase and his wife Edna Scrase[2] abused and financially manipulated Plaintiff's mother, Barbara Gibson-Poole, in the last years of her life. (ECF No. 16). When visiting her mother in 2015, Plaintiff discovered that

---

[1] These facts come from Plaintiff's complaint and are not intended to be findings of fact.

[2] For clarity, the Court refers to Richard Scrase and Edna Scrase by their first names.

Gibson-Poole was dating a man—James Amer—who "stated he was going to marry [Gibson-Poole], sell her house, and keep the proceeds for himself and his family." (*Id.* at 6). To protect her mother's house, Plaintiff obtained a power of attorney over Gibson-Poole's financial matters and quit-claimed Gibson-Poole's house into Plaintiff's trust. (*Id.*). Amer passed away on January 2, 2016. (*Id.* at 7).

On February 12, 2016, Richard and Edna arranged for Gibson-Poole to fly to their home in Bellingham, Washington, where they kept her against her will. (*Id.* at 8). Gibson-Poole attempted unsuccessfully to run away. (*Id.*). While in Washington, Richard, Edna, and Gibson-Poole telephonically attended a family court hearing held to address Plaintiff's power of attorney and transfer of Gibson-Poole's home. (*Id.* at 2, 8). At the hearing, the court found that Gibson-Poole was capable of managing her personal decisions and financial affairs and thus returned all real and personal property back to Gibson-Poole. (*Id.*). However, Plaintiff alleges that Gibson-Poole had "no voice and no understanding of the hearing," apparently as a result of Richard and Edna's actions. (*Id.*).

Plaintiff asserts that, despite the court's finding that Gibson-Poole was capable of managing her affairs, Richard manipulated Gibson-Poole into transferring the title of her house into his name on March 30, 2016. (*Id.* at 7). Only after the transfer documents were signed and recorded did Richard and Edna allow Gibson-Poole to return home on April 2, 2016. (*Id.* at 8). On August 8, 2016, Gibson-Poole signed a last will and testament—apparently at Richard's behest—favoring Richard and naming him as her only child. (*Id.* at 7). Sixteen days later, Richard "had a doctor declare" that Gibson-Poole was incapacitated. (*Id.*).

In September of 2017, Richard and Edna moved Gibson-Poole to an assisted living facility in Washington State against Gibson-Poole's will, isolating her from her family. (*Id.* at 9). Richard sold Gibson-Poole's house for a price below the home's value on March 10, 2018. (*Id.* at 10). Gibson-Poole died alone in the assisted living facility on December 19, 2018. (*Id.*).

Plaintiff's amended complaint alleges three[3] claims: (1) fraud on the court; (2) elder abuse; and (3) false imprisonment. (*Id.* at 11-12). To support her fraud-on-the-court claim, Plaintiff alleges that Richard and Edna arranged for Gibson-Poole to visit them before the hearing so that they could prevent Gibson-Poole from having a voice at the hearing. (*Id.* at 8). Plaintiff also alleges that, despite the court's ruling at the February 25, 2016 hearing that Gibson-Poole could handle her own affairs, Richard convinced Gibson-Poole to transfer her house to him only twelve days later. (*Id.* at 7-9, 11-12). To support her elder abuse and false imprisonment claims, Plaintiff alleges that Richard and Edna fraudulently obtained testamentary and property-transfer documents favorable to them from Gibson-Poole on March 30, 2016 and on August 8, 2016 and placed Gibson-Poole in an assisted living facility in September of 2017. (*Id.*). Richard and Edna allegedly isolated Gibson-Poole from her family until her death on December 19, 2018. (*Id.* at 10). Plaintiff asserts that the Court has diversity jurisdiction over her complaint because Richard and Edna are citizens of a different state and the amount in controversy exceeds $75,000. (*Id.* at 1).

Plaintiff's amended complaint also explains why Court should toll the applicable statutes of limitation. Plaintiff asserts that she did not learn the basis of her claims—that Richard and Edna had begun to take control of Gibson-Poole's financial affairs and were preventing Gibson-Poole from leaving—until March 23, 2017, when Richard and Edna's neighbor informed her. (*Id.* at 1-2). Plaintiff adds that she was incarcerated from August 12, 2017 until August 1, 2018. (*Id.* at 3). After she was released, she was under probation terms that expressly ordered her to have no contact with her mother and no involvement in her affairs. (*Id.*). Plaintiff was subject to these conditions until December 13, 2019. (*Id.*). Plaintiff adds that, during the COVID-19 pandemic, Governor Steve Sisolak's Declaration of Emergency Directive 009 tolled the statutes of limitation from March 12, 2020 until July 31, 2020, when the Governor terminated the tolling through Emergency Directive 026. (*Id.*).

---

[3] Plaintiff's complaint identifies four claims, but the undersigned magistrate judge recommended dismissing Plaintiff's "exploitation for financial gain" claim with prejudice as redundant, which recommendation the assigned district judge adopted. (ECF No. 13 at 2); (ECF No. 15).

## II. Legal standards.

### A. *Screening.*

Upon granting an application to proceed *in forma pauperis*, courts additionally screen the complaint under § 1915(e). Federal courts are given the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*, 556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Id.* at 678. Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. *See Rasul v. Bush*, 542 U.S. 466, 489 (2004). Under 28 U.S.C.

§ 1331, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Cases "arise under" federal law either when federal law creates the cause of action or where the vindication of a right under state law necessarily turns on the construction of federal law. *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088-89 (9th Cir. 2002). Whether federal-question jurisdiction exists is based on the "well-pleaded complaint rule," which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Under 28 U.S.C. § 1332(a), federal district courts have original jurisdiction over civil actions in diversity cases "where the matter in controversy exceeds the sum or value of $75,000" and where the matter is between "citizens of different states." Generally speaking, diversity jurisdiction exists only where there is "complete diversity" among the parties; each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

### B.   Tolling.

When jurisdiction in federal court rests on the parties' diversity of citizenship, the court will apply substantive state law, including state law regarding statutes of limitation and tolling. *G and G Productions LLC v. Rusic*, 902 F.3d 940, 946 (9th Cir. 2018). Nevada statutory law does not toll the statute of limitations for incarcerated individuals. Nev. Rev. Stat. (NRS) 11.250(3). It is also unclear whether Nevada courts equitably toll statutes of limitations on the basis of incarceration. *See Vonseydewitz v Las Vegas Metro. Police Dep't*, No. 82900, 2021 WL 4238760, at *2 (Nev. Sept. 16, 2021) (unpublished disposition). On the other hand, the Court has not found authority that Nevada courts have determined the equitable tolling analysis totally inapplicable to incarceration.

The Nevada Supreme Court has explained that "[t]he doctrine of equitable tolling is a nonstatutory remedy that permits a court to suspend a limitations period and allow an otherwise untimely action to proceed when justice requires it." *Fausto v. Sanchez-Flores*, 137 Nev. 113, 115-16, 482 P.3d 677, 680 (2021). "A statute of limitations…is primarily intended to prevent surprises through the revival of claims that have been allowed to slumber until evidence has been

lost, memories have faded, and witnesses have disappeared." *Id.* (internal citations and quotations omitted). Because the main purpose of a statute of limitations is to encourage the plaintiff to pursue his rights diligently, when an extraordinary circumstance prevents him from bringing a timely action, the restriction imposed by the statute of limitations does not further the statute's purpose. *Id.* (citing *CTS Corp. v. Waldburger*, 573 U.S. 1, 10 (2014)). Accordingly, Nevada courts presume that equitable tolling applies if the period in question is a statute of limitations and if tolling is consistent with the statute. *Id.*

The Nevada Supreme Court has set forth nonexclusive factors to consider when determining whether equitable tolling is appropriate:

> the diligence of the claimant; the claimant's knowledge of the relevant facts; the claimant's reliance on authoritative statements by the administrative agency that misled the claimant about the nature of the claimant's rights; any deception or false assurances on the part of the employer against whom the claim is made; the prejudice to the employer that would actually result from delay during the time that the limitations period is tolled; and any other equitable considerations appropriate in the particular case.

*Copeland v. Desert Inn Hotel*, 99 Nev. 823, 826, 673 P.2d 490, 492 (1983).

While *Copeland* was specific to an employment claim, the Nevada Supreme Court has applied the relevant *Copeland* factors to statutory limitations. *See Fausto*, 137 Nev. at 117-18, 482 P.3d at 681-82. The Nevada Supreme Court has "required plaintiff[]s to at least demonstrate that, despite their exercise of diligence, extraordinary circumstances beyond their control prevented them from timely filing their claims." *Id.* Ultimately, the "focus of equitable tolling is whether there was excusable delay by the plaintiff." *Id.* (internal citations and quotations omitted).

**III. Discussion.**

  **A.  *Plaintiff's amended complaint.***

   1.  <u>Fraud on the court.</u>

For the purposes of screening, Plaintiff has plead sufficient facts to support her fraud allegation, to show that she has standing to bring this claim on behalf of Gibson-Poole, and to

show that her fraud claims should be tolled.  Plaintiff's claim for fraud on the court appears to be one for extrinsic fraud, which is "conduct preventing a party from presenting his claim in court," and is "not an error by that court…[i]t is rather, a wrongful act committed by the party or parties who engaged in the fraud." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). Under Federal Rule of Civil Procedure 17(a), "[e]very action shall be prosecuted in the name of the real party in interest."  Only "[a]n executor, administrator, guardian, bailee, *trustee* of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute" is permitted to bring a suit without joining the real party in interest.  Fed. R. Civ. P. 17(a) (emphasis added).  The statute of limitations for fraud is three years.  NRS 11.190(3)(d).  The Nevada Supreme Court has concluded that fraud actions are tolled under NRS 11.190(3)(d) until the party bringing the claim "knew or had reason to know that its rights had been violated." *Metropolitan Water Dist. of Southern California v. State*, 99 Nev. 506, 510, 665 P.2d 262, 25 (1983) (citing *Shupe v. Ham*, 98 Nev. 61, 65, 639 P.2d 540, 542 (1982)).

Plaintiff alleges that Richard and Edna flew Gibson-Poole out to their home before the February 25, 2016 hearing in an attempt to manipulate Gibson-Poole's attendance at that hearing. Plaintiff alleges that this resulted in Gibson-Poole having no voice or understanding of the hearing.  For the purposes of screening Plaintiff has alleged sufficient facts to demonstrate an extrinsic fraud claim.[4]

Regarding tolling, Plaintiff claims that she did not learn of Richard and Edna's fraud until March 23, 2017.  There were 1,952 days between March 23, 2017 and the date Plaintiff filed her complaint, July 27, 2022.  The statute of limitations for fraud claims is three years, or 1,095 days. Plaintiff asserts that she was unable to assert her claim between August 12, 2017 and December 13, 2019—853 days—because of her incarceration and subsequent probation.  She asserts that her claim was tolled between March 12, 2020 and July 31, 2020—141 days—because of the

---

[4] Plaintiff also alleges that Richard was in "contempt of court" by manipulating Gibson-Poole to transfer her home to him and to name him in a new will after the court found that Gibson-Poole was capable of maintaining her own finances.  However, these facts do not form the basis for an extrinsic fraud claim because Plaintiff has not alleged that Richard or Edna misled the court through these actions.

Governor's COVID orders.  Subtracting the days that Plaintiff alleges she was unable to file her complaint (994 days) from the days between Plaintiff learning of her claim and when she filed it (1,952 days) leaves a period of 958 days.  This is less than the three-year (1,095-day) statute of limitations.  The Court thus recommends allowing Plaintiff's fraud claim to proceed.

### 2. Elder abuse

For the purposes of screening, Plaintiff has plead sufficient facts to support her elder abuse claim, her standing as trustee for that claim, and that the Court should toll the statute of limitations for that claim.  NRS 41.1395, provides a cause of action for older or vulnerable people to recover two times the actual damages incurred for personal injury, death, neglect, or a loss of money or property caused by exploitation.  That statute provides that the person who caused the injury, death, or loss is liable "to the older person or vulnerable person."  NRS 41.1395(1).  Federal Rule of Civil Procedure 17(a) provides that a trustee is permitted to bring a suit without joining the real party in interest.  Fed. R. Civ. P. 17(a).  Under NRS 11.190(3)(a), actions "upon a liability created by statute"—like the NRS 41.1395 elder abuse claim—must be brought within three years.  The Nevada Supreme Court has not expressly concluded that equitable tolling applies to the limitations period in NRS 11.190(3)(a).  But it has not foreclosed it either.  *See U.S. Bank National Association v. 5316 Clover Blossom Ct. Trust*, No. 75861-COA, 2019 WL 5260057, at *2 n.2 (Oct. 16, 2019) (unpublished disposition) (rejecting a party's argument that the statute of limitations under NRS 11.190(3)(a) was equitably tolled not because equitable tolling was entirely inapplicable, but because the party was previously aware of its possible claim).

Plaintiff has sufficiently alleged facts supporting her elder abuse claim.  She alleges that Richard and Edna manipulated Gibson-Poole into transferring her home to Richard and signing a will favoring him and that they isolated Gibson-Poole against her will at the end of her life.  Plaintiff also alleges that she is the sole surviving trustee of Gibson-Poole's trust and, as a result, has standing to assert Gibson-Poole's claims on her behalf.  Finally, Plaintiff has alleged sufficient facts that the Court should toll the three-year (1,095-day) statute of limitations.  The last day that Gibson-Poole could have experienced Richard and Edna's abuse was December 19,

2018, the day Gibson-Poole passed away. There were 1,316 days between Gibson-Poole's passing and Plaintiff filing her complaint. Plaintiff was under a no-contact order on the date of Gibson-Poole's passing until December 13, 2019, tolling the statute of limitations for 359 days. The Governor's COVID orders then tolled the statute of limitations another 141 days. Subtracting the time Plaintiff was unable to file her complaint (500 days) from the days between Gison-Poole's passing and the time Plaintiff filed her complaint (1,316 days) results in a time period of 816 days, well under the 1,095-day statute of limitations. The Court thus recommends allowing Plaintiff's elder abuse claim to proceed.

                3.        <u>False imprisonment.</u>

Even liberally construing Plaintiff's complaint and considering her tolling arguments, Plaintiff's false imprisonment claim is time-barred. NRS 11.190(4)(c) provides a two-year limitations period for an action for false imprisonment. NRS 11.190(4)(c); *Wilson v. Las Vegas Metropolitan Police Dep't*, 498 P.3d 1278, 1281, 147 Nev. Adv. Op. 70 (Nev. Nov. 18, 2021). The Nevada Supreme Court has employed the equitable tolling analysis when considering the two-year limitation in NRS 11.190(4)(c). *Id.* at 1282.

The latest date that Gibson-Poole could have experienced Richard and Edna's imprisonment was December 19, 2018, the day she passed away. Plaintiff asserts that she was unable to assert her claim between Gibson-Poole's death and December 13, 2019 because of a no-contact order. She adds that Governor Sisolak's order tolling the statute of limitations was in effect from March 12, 2020 until July 31, 2020. There were 1,316 days between Gibson-Poole's death and the date Plaintiff filed her complaint. Subtracting the 500 days that Plaintiff alleges that she was unable to file her complaint leaves a 816-day period in which Plaintiff could have filed her complaint. This exceeds the two-year (730-day) statute of limitations for false imprisonment claims. The Court thus recommends dismissing Plaintiff's false imprisonment claim with prejudice.

        **B.**        ***Plaintiff's motion for appointment of counsel.***

Plaintiff moves the Court to appoint counsel, explaining that she is financially incapable of affording counsel and has been unable to obtain a lawyer on contingency or a pro bono basis.

Under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved.'" *Id.* "Neither of these considerations is dispositive and instead must be viewed together." *Id.*

The Court denies Plaintiff's motion to appoint counsel because she has not demonstrated exceptional circumstances. Regarding the merits of Plaintiff's actions, two of her claims have passed screening, which is a relatively low threshold, so it is unclear how far her claims will proceed. And regarding Plaintiff's ability to articulate her claims pro se, Plaintiff has demonstrated the ability to amend her claims based on the Court's previous orders, keep up with deadlines, and articulate her claims well. Indeed, Plaintiff has demonstrated an ability to understand and clearly articulate why her claims should be tolled. The Court thus finds that exceptional circumstances do not exist and denies Plaintiff's motion for appointment of counsel without prejudice.

   **C.**  ***Plaintiff's motion for issuance of summons.***

Plaintiff moves for the Court to issue summons so that she can serve Defendants. However, Plaintiff's motion is premature. The undersigned magistrate judge has recommended that Plaintiff's fraud and elder abuse claims pass screening, but the assigned district judge has not adopted that recommendation. The Court will only issue summons if the district judge accepts the undersigned's recommendation that Plaintiff's complaint pass screening. The Court thus denies Plaintiff's motion for summons as premature.

///

///

///

**ORDER**

**IT IS THEREFORE ORDERED** that Plaintiff's motion for appointment of counsel (ECF No. 17) is **denied.**

**IT IS FURTHER ORDERED** that Plaintiffs motion for issuance of summons (ECF No. 19) is **denied.**

**REPORT & RECOMMENDATION**

**IT IS THEREFORE RECOMMENDED** that Plaintiff's false imprisonment claim in her second amended complaint (ECF No. 16) be **dismissed with prejudice.**

**IT IS FURTHER RECOMMENDED** that Plaintiff's second amended complaint (ECF No. 16) proceed on her fraud and elder abuse claims.

**NOTICE**

Pursuant to Local Rule IB 3-2 any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days after service of this Notice. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985) *reh'g denied*, 474 U.S. 1111 (1986). The Ninth Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: December 6, 2023

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE